Ann HERNANDEZ; Lori Pelligri; Caroline Allen; Diane Elms; Susan Suhr-Gibson; Maribel Rodriquez–Going; Frank Lopp; Bridget Mooney; Nick Napier; Margie Pacheco; and Adriana Wilson, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Lamar ALEXANDER, in his capacity as Secretary of Education of the United States; Higher Education Assistance Foundation, Inc., a Minnesota Corporation; Texas Education Corporation, d/b/a Southern Technical Institute; Wayne Gilpin, Individually, and in his capacity as Officer of Texas Education Corporation, d/b/a Southern Technical Institute; David Reasor, Individually and as Officer of Texas Education Corporation, d/b/a Southern Technical Institute; Union Bank & Trust Co., Defendants.

No. CV–S–91–705–PMP (LRL).

United States District Court,
D. Nevada.

Dec. 17, 1993.

Barbara E. Buckley, Nevada Legal Services, Inc., Las Vegas, NV, Raymond Rodriquez, Jon Sasser, Nevada Legal Services, Inc., Carson City, NV, for plaintiffs.

Mark C. Scott, Beckley, Singleton De Lanoy Jemison & List, Las Vegas, NV, for Union Bank.

John E. Leach, Woodburn & Wedge, Las Vegas, NV, for Higher Education Assistance Foundation.

## ORDER

PRO, District Judge.

Before the Court is a Motion for Summary Judgment (# 144) filed by Defendant Higher Education Assistance Foundation ("HEAF") on April 30, 1993. Plaintiffs filed an Opposition (# 164) on October 27, 1993. On November 16, 1993, HEAF filed a Reply (# 170).

Also before the Court is Defendant Union Bank & Trust Co.'s ("Union Bank's") Motion for Summary Judgment (# 162) filed on October 26, 1993. Plaintiffs filed an Opposition

(# 167) on November 9, 1993. On November 22, 1993, Union Bank filed a Reply (# 172).

## FACTS

Plaintiffs all attended Defendant Southern Technical Institute ("STI") in Las Vegas, Nevada, between April 1989 and April 1990 to participate in a program offering training as a "Psychiatric Assistant." To fund their educations, each Plaintiff obtained a Guaranteed Student Loan ("GSL") through Defendant Union Bank. Plaintiffs now claim to have been defrauded by the school with regard to both the quality of education and the marketability of their degrees. As a result, Plaintiffs seek a declaration from the Court that they may use school related defenses against the lenders and guarantors of the GSL's and are not otherwise required to repay their loans under state and federal law.

In a prior Order (# 57), the Court dismissed all of Plaintiffs' causes of action against Defendants HEAF and Union Bank, except for Counts VII and VIII. As to Count VII, the Court found that Plaintiffs would be allowed to assert all defenses which may be asserted against Defendant STI against the other Defendants to the extent that Plaintiffs could establish the existence of an "origination relationship" between Union Bank and STI. Similarly, as to Count VIII, based upon Nevada law, the Court found:

> to the extent that a close connection exists between the school and the lender such that there is an "origination relationship," both Nevada law, Nev.R.Stat. § 394.590(4), and federal law, 34 C.F.R. § 682.206(a), would permit defenses to be asserted against the lender.

Order (# 57) at 24.

Defendants HEAF and Union Bank now come before the Court on Counts VII and VIII and raise the same issue in their respective Motions for Summary Judgment. Defendants argue that, as a matter of law, they are entitled to summary judgment in their favor because Plaintiffs cannot demonstrate that an origination relationship existed between Defendants STI and Union Bank.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569, (1968); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir. 1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways*

*Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982); *Admiralty Fund v. Jones*, 677 F.2d 1289, 1293 (9th Cir.1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor*, 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). *See also Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

### DISCUSSION

Plaintiffs argue that they can recover against Defendants HEAF and Union Bank by virtue of the existence of an alleged "origination relationship" between Defendants STI and Union Bank. Both Plaintiffs and Defendants rely upon the definition of an origination relationship provided in the Code of Federal Regulations which states:

> *Origination:* A special business relationship between a school and a lender, in which the lender delegates to the school, or to an entity or individual affiliated with the school, substantial functions or responsibilities normally performed by lenders before making loans. In this situation the school is considered to have "originated" a loan made by the lender. The Secretary determines that "origination" exists if, for example—
>
> (1) A school determines who will receive the a loan and the amount of the loan; or
>
> (2) The lender has the school verify the identity of the borrower or complete forms normally completed by the lender.

34 C.F.R. § 682.200 (1992).[1]

Defendants urge this Court to find that for an origination relationship to exist under 34 C.F.R. § 682.200, a lender would have to delegate *all* responsibilities for making a loan to the school. However, this Court finds nothing in the regulation to indicate that all lender functions have to be delegated to the school before an origination relationship may be found to exist. The definition merely requires that "substantial functions or responsibilities normally performed by lenders before making loans" be delegated to the school; it says nothing about the number of lender functions that must be delegated. Consequently, for Plaintiffs to survive summary judgment, they must at least demonstrate that a genuine issue of material fact

---

1. Note that during the pendency of this case the definition of "origination" contained in § 682.-200 was amended to read as follows:

   *Origination relationship:* A special business relationship between a school and a lender, in which the lender delegates to the school, or to an entity or individual affiliated with the school, substantial functions or responsibilities normally performed by lenders before making FFEL program loans. In this situation the school is considered to have "originated" a loan made by the lender.

   34 C.F.R. 682.200 (1993).

   Thus, the term "origination" as it appears in the definition section is now defined as an "origination relationship." Also, the definition itself has changed in that the word "loan" has been changed to "FFEL program loans," and the examples section of the definition has been deleted. Nevertheless, for the purposes of deciding the present motion, the Court finds that the change in the definition does not alter the basic meaning of "origination" as it was previously defined, and does not have any impact upon the Court's ultimate determination as to whether an origination relationship existed in this case.

exists as to whether lender functions were delegated by Union Bank to STI, and that those functions were "substantial" in nature.

Defendants argue that no substantial functions or responsibilities were ever delegated to Defendant STI by Union Bank. Plaintiffs, on the other hand, argue that the following substantial functions were delegated: 1) that STI actually determined the amount of the various loans that were given; 2) that STI verified the identity of the borrower; and 3) that STI completed forms normally completed by the lender, such as signing the promissory note.

After examining the evidence presented in support of Plaintiffs' claims, the Court finds that this evidence is insufficient to raise a genuine issue of material fact, and even if the delegations alleged by Plaintiffs occurred, as a matter of law, they are not sufficiently substantial to give rise to an origination relationship. Consequently, Plaintiffs are precluded from asserting their school-related defenses against Defendants HEAF or Union Bank.

First, Plaintiffs contend that STI rather than Union Bank actually determined the amount of the loans. Plaintiffs argue that because Union Bank routinely lent the amount requested by the borrower that this is evidence that Union Bank delegated its responsibility of determining the amount of the loan. However, a distinction must be made between determining the amount of the loan *requested* and determining the amount *actually lent.* While STI may have aided students in determining the amount of the loan that would be requested on the loan application, there is no evidence that Union Bank ever delegated its ultimate authority of determining the amount that would actually be lent. Nothing more can be inferred from the copies of the loan applications submitted by Plaintiffs in support of their position than

the fact the Union Bank lent Plaintiffs the amount they requested. *See* Plaintiffs' Opposition (# 164), Exhibit "G."

Second, Plaintiffs assert that STI's verification of the identity of the borrower constitutes another substantial lender function. Plaintiffs argue that since Union Bank did nothing to identify the identity of the borrower, that function must have been delegated to STI. However, Defendants have presented unrefuted evidence in the form of deposition testimony that there exists no requirement that a lender even verify the identity of the borrower. *See* Defendant HEAF"s Reply (# 170), Exhibit "C", Deposition of Larry Oxendine, at 18–20. Furthermore, Plaintiffs have presented no evidence that Union Bank took any affirmative steps to have STI identify the identity of the borrowers. *See Jackson v. Culinary School of Washington,* 811 F.Supp. 714, 722 (D.D.C. 1993) ("The language [of 34 C.F.R. § 682.200 (1992) ] clearly envisions some type of affirmative action on the part of the lender [in having the school verify the identity of the borrower]."). Thus, this delegated function does not constitute evidence that would give rise to the existence an origination relationship.

Finally, Plaintiffs assert that STI completed and had the borrowers sign the promissory notes. As to the alleged completion of the promissory note, Plaintiffs have offered no evidence that STI completed portions of the note that are *normally completed by the lender. See* 34 C.F.R. § 682.200(b)(2). Simply filling out portions of the note intended to be completed by the borrower or the school is not evidence of an origination relationship. Furthermore, the Court finds that merely having the borrower sign the promissory note does not rise to the level of a substantial lender function. *See Jackson,* 811 F.Supp. at 722 n. 3.[2]

**2.** The Court cites to *Jackson* throughout this Order primarily because the issue presently before the Court is both factually and legally similar to one that was faced by the United States District Court for the District of Columbia in that case. The plaintiffs in *Jackson* attempted to establish the existence of an origination relationship between the lender and the school by arguing that substantial lender functions had been delegated.

The *Jackson* plaintiffs alleged that the lender permitted the school to determine who would receive the loans and in what amount; the school selected the lender for the plaintiffs; the school filled out portions of the promissory note reserved for the lender; the school verified the identity of the borrower; the school transmitted loan proceeds; the school gave initial loan counseling; the school had the borrower sign the

Plaintiffs have failed to come forward with any evidence from which the Court could find that a material issue of fact exists as to the existence of an origination relationship. Furthermore, the evidence presented to the Court of the tasks performed by STI, as a matter of law, do not qualify as substantial. In the same manner as the court found in *Jackson*, "none of the functions indicates a special relationship between the lenders here involved and the [s]chool." 811 F.Supp. at 722 n. 3. As discovery in this case has concluded, and Plaintiffs have failed to demonstrate that a genuine issue of material fact exists, they "may not simply rest on the hope of discrediting [Defendants'] evidence at trial." *Frederick S. Wyle P.C. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir.1985).

IT IS THEREFORE ORDERED THAT Defendant Higher Education Assistance Foundation's Motion for Summary Judgment (# 144) is granted.

IT IS FURTHER ORDERED THAT Defendant Union Bank & Trust Co.'s Motion for Summary Judgment (# 162) is granted.

promissory notes. *See* 811 F.Supp. at 722–723, 723 n. 3. The district court found, however, that "[b]ecause the Plaintiffs have failed to come forward with any evidence that the School performed any substantial lender functions, no evidence of an origination relationship between the School and the lender exists." *Id.* at 722.